**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

JOHN C. WATTS,

               Plaintiff,

      v.

NOVARTIS PHARMACEUTICALS
CORPORATION,

             Defendant.

Civil Action No.:  5:08-CV-02354-SL

**DEFENDANT NOVARTIS PHARMACEUTICALS CORPORATION'S
MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS WITH PREJUDICE**

Novartis Pharmaceuticals Corporation ("Novartis") files this memorandum in support of its motion to dismiss this case with prejudice because there is no person with the requisite authority or standing to pursue it.  Although the United States District Court for the Middle District of Tennessee ("MDL court") previously approved John C. Watts as the substitute plaintiff following the death of the original plaintiff Bernard A. Watts, Novartis has recently learned that the MDL court's approval was based on misstatements of John Watts's legal status to serve as the substitute plaintiff.  As discussed in more detail in this brief, this same kind of conduct has resulted in the dismissal of more than a dozen other Aredia®/Zometa® cases.  *See infra* at 8-10.

Neither John Watts nor any other person has been duly appointed as an appropriate representative of Bernard Watts's estate, as is required by Ohio law to continue litigation after a plaintiff's death under Federal Rule of Civil Procedure 25(a)(1).[1]  Consequently, the action has not had a genuine party-plaintiff since Bernard Watts's death nearly four years ago.  Novartis asks the Court to dismiss the action with prejudice based on the failure to comply with Ohio state law, the MDL court's Case Management Order, and Federal Rule of Civil Procedure 25, before more time and expense are incurred by Novartis and before more judicial resources are wasted on this case.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Bernard A. Watts, a resident of Stow, Ohio, filed this action in this Court on October 3, 2008, alleging that his exposure to the intravenous bisphosphonate drug Zometa® caused him to develop osteonecrosis of the jaw.  Compl., ¶ 2 (ECF No. 1).[2]  The case was transferred to the MDL court in November 2008, where certain aspects of fact discovery and pretrial procedures were completed before the case was remanded to this Court in June 2014.

Bernard Watts passed away on August 21, 2010.  On January 26, 2011, plaintiff's counsel filed a Suggestion of Death.  *See* Suggestion of Death (Exhibit 1).  On April 25, 2011, plaintiff's counsel filed a Motion for Substitution in the MDL court on behalf of John C. Watts,

---

[1] *See In re Baycol Prods. Litig.*, 616 F.3d 778, 785 (8th Cir. 2010) ("state law governs *who* can . . . qualify as a proper party for substitution under Rule 25(a)(1)" (citing *Moore's Federal Practice* § 25.12[3] (3d ed. 2010))); *Giles v. Campbell*, 698 F.3d 153, 156 (3d Cir. 2012) ("The substantive law applied to determine whether a claim is extinguished [by the death of a party] is not supplied by Rule 25," but by "the applicable [state] substantive law."); *Anderson v. Romero*, 42 F.3d 1121, 1123 (7th Cir. 1994) (applying Illinois state law to determine "the proper party" for substitution after the plaintiff died).

[2] This FDA-approved medication continues to be prescribed routinely for terminally ill patients with certain cancers that have metastasized to bone.  Bernard Watts was diagnosed with colon cancer, prostate cancer, lung cancer, squamous cell carcinoma of the skin, basal cell carcinoma of the skin, and non-Hodgkin's lymphoma that had metastasized to his bones.

the son of Bernard Watts.  *See* Motion for Substitution (Exhibit 2).

The Suggestion of Death identified John Watts as the "Executor of the Estate of Bernard Watts," Exhibit 1, and the Motion for Substitution twice stated that John Watts was the "Executor of the Estate of Bernard A. Watts."  Motion for Substitution, at introductory paragraph and ¶ 3.  Based upon these representations that John Watts was the Executor of the Estate of Bernard A. Watts, Novartis did not oppose the Motion for Substitution and the MDL court approved it on April 27, 2011, two days after it was filed.  *See* 4/27/11 Substitution Order (Exhibit 3).  Since that time, plaintiff's counsel has repeatedly represented to the MDL court, to Novartis, and to this Court, that John Watts is the "Executor of the Estate of Bernard A. Watts." *See* Pl.'s 2/28/14 Notice filed in MDL court (Exhibit 4); excerpts of Pl.'s 2/24/14 & 6/23/14 Discovery Responses (Exhibit 5); Pl.'s 7/3/14 Mot. for Admission Pro Hac Vice of William B. Curtis (ECF No. 5).  Additionally, in March 2014, Novartis's counsel deposed John Watts, at which time he represented that he believed he had a "letter or document from a court authorizing [him] to act on behalf of [his] father's estate."  John Watts Dep. Excerpt (Exhibit 6) at 30:21-24.

In actuality, Novartis has determined that no estate has been opened for Bernard Watts either prior to, or since, the Motion for Substitution was granted by the MDL court, and that John Watts has never been appointed as the executor of his father's estate.[3]

## **ARGUMENT**

Federal courts "bear an independent obligation to assure [themselves] that jurisdiction is proper before proceeding to the merits."  *Plains Commerce Bank v. Long Family Land & Cattle Co.*, 554 U.S. 316, 324 (2008).  It is axiomatic that in a federal case predicated on diversity

---

[3] Upon inquiry by Novartis counsel, the probate authority in Summit County, Ohio, the location of Bernard Watts's last residence in Ohio confirmed that no estate was ever opened for Bernard

jurisdiction, if a "plaintiff's claim w[ere] unenforceable in the courts of that state, [then] it was equally unenforceable in the United States District Court." *Robison v. Jones*, 261 F.2d 584, 586 (8th Cir. 1958) (affirming dismissal of action predicated on diversity for failure to revive action properly under Arkansas law following the death of the plaintiff). *See also Felder v. Casey*, 487 U.S. 131, 151 (1988) ("[W]hen a federal court exercises diversity or pendent jurisdiction over state-law claims, the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court." (internal quotation marks omitted)).

This case has lacked a proper party-plaintiff since Bernard Watts's death nearly four years ago. The combination of misrepresentations, failure to comply with Ohio law, and violations of the MDL court's Case Management Order ("CMO") and Federal Rule of Civil Procedure 25 now require the dismissal of this case with prejudice.

## I. Under Ohio Law, John Watts Has No Authority To Maintain This Lawsuit.

Ohio substantive law governs whether John Watts may continue the claims originally asserted by Bernard Watts. *See* footnote 1 *supra*. Ohio's "survival statute" provides that "causes of action for . . . injuries to the person or property . . . shall survive." Ohio Rev. Code Ann. § 305.21. Under Ohio law, legal actions that survive a decedent are properly litigated by a duly appointed personal representative. *See id.*; *Williams v. Barrick*, No. 08AP-133, 2008 WL 4174146, at *4 (Ohio Ct. App. Sept. 11, 2008) (affirming dismissal where the plaintiff was not the personal representative of decedent's estate and explaining that "in a survival action, a personal representative of the decedent's estate pursues the decedent's claims for the benefit of her estate"); *Bridges v. Jackson*, No. 37303, 1978 WL 217951, at *4 (Ohio Ct. App. Apr. 27,

---

Watts and that no one ever requested or obtained appointment as the representative for him or his estate. *See* 7/25/14 Declaration of Michael Casady ("Casady Decl.") (Exhibit 7).

4

1978) ("Under [§] 2305.21, the decedent's personal representative is the only person who is competent to bring [a survival] action" because "[s]urvival actions are maintained for the benefit of the decedent's estate not for the decedent's next-of-kin."); *Piskura v. TASER Int'l, Inc.*, No. 1:10-cv-248-HJW, 2013 WL 1329704, at *4 (S.D. Ohio Mar. 29, 2013) ("'Under the general survival statute, [§] 2305.21, a victim's right of action for personal injuries survives and passes to her personal representative . . . [who] may maintain an action in the same manner in which decedent could have maintained such action if [he] had survived.'" (quoting *Shinaver v. Szymanski*, 471 N.E.2d 477, 482 (Ohio 1984))).

A person like John Watts, who was identified as the proposed executor in his father's will,[4] has no authority as a result of being so identified *until and unless* he then probates the will and is duly appointed by a court as the executor.  *See Mousa v. Mount Carmel Health Sys., Inc.*, No. 12AP-737, 2013 WL 3270907, at *2 (Ohio Ct. App. June 25, 2013) ("In Ohio, a personal representative of the decedent is *a court-appointed* administrator or executor of the decedent's estate and is not defined according to familial relationships.") (emphasis added); *Corron v. Corron*, No. 5-86-3, 1988 WL 6015, at *2 (Ohio Ct. App. Jan. 26, 1988) (a will is "'a mere scrap of paper, inert and lifeless, until it is clothed with the garment of the law.  It is a mere carcass until infused with the blood of probate.'" (quoting *Pettit v. Morton*, 162 N.E. 627 (Ohio Ct. App. 1928))); *In re Estate of Irwin*, 266 N.E. 2d 596, 598 (Ohio Ct. Com. Pl. 1969) ("[T]he will is not a will until it has been offered and admitted to probate.  Until that time it is merely an instrument signed and witnessed and of no legal effect.").

---

[4] Bernard Watts's will, as attached to plaintiff's Motion for Substitution (Exhibit 2), nominated John Watts as executor in the event that his wife, Virginia Watts, could not act as such.  Virginia Watts predeceased Bernard Watts.  John Watts Dep. Excerpt (Exhibit 6) at 56:23-57:7.

As of today, almost four years after Bernard Watts's death, no probate proceedings have been initiated, no estate has been opened, and no petition has been filed by John Watts – or anyone else – to be legally appointed as representative of Bernard Watts's estate. *See* Casady Decl. (Exhibit 7). Novartis has been prejudiced by spending time and money defending a lawsuit which, for nearly four years, has not had a genuine party plaintiff.[5]

## II. John Watts, Through His Counsel, Has Also Violated Rule 25 and the MDL Court's Case Management Order.

### A. Applicable Law and MDL Court Orders Governing Substitution of Plaintiffs

Federal Rule of Civil Procedure 25(a) provides that substitution may occur if "the claim is not extinguished" as a result of the death. Fed. R. Civ. P. 25(a)(1). The Rule provides that a "motion for substitution may be made by any party or by the decedent's successor or representative." *Id.* However, despite the fact that any of the identified persons (or parties) may file a substitution motion, the Rule expressly states that the court may then order substitution of "*the proper party*." *Id.* (emphasis added). The determination of "the proper party" to be substituted is based on state law. *See* footnote 1 *supra*.

This case and the related MDL proceeding involve Aredia® and/or Zometa®, FDA-approved medications prescribed for terminally ill patients with multiple myeloma and certain other cancers that have metastasized to bone. Given this plaintiff population, the MDL court and the parties all understood from the time the MDL was authorized in 2006 that many of the plaintiffs would die before their suits could be concluded. As a result, the MDL court issued special requirements governing substitutions for deceased plaintiffs. The MDL court's CMO

---

[5] *See Wallace v. Novartis Pharm. Corp.*, 984 F. Supp. 2d 377, 386-87 (M.D. Pa. 2013) ("Novartis has been prejudiced by being exposed to prolonged and unnecessary litigation" following the failure to substitute a proper party). In *Wallace*, the court dismissed another Aredia®/Zometa® case after finding, *inter alia*, that a person claiming to be a personal

incorporates and expands upon Rule 25(a) and governs the substitution process for deceased plaintiffs in the MDL.[6]  CMO, § V.

In particular, the CMO required plaintiffs' counsel to file a Suggestion of Death within 30 days of a plaintiff's death (later amended to 60, then 90 days) and then to file a Motion for Substitution 90 days thereafter in accordance with Federal Rule of Civil Procedure 25(a).  *Id.* §§ V.A and V.B.  The CMO also requires that any Motion for Substitution address "applicable state law" and "the applicable state survivorship statute" and "describe why the proposed substitute plaintiff is a 'proper' party" under state law.  *Id.* §§ V.C.1 and V.C.2.  Moreover, "[i]n the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims of a deceased plaintiff," the CMO directs that "plaintiff's counsel shall initiate or cause to be initiated proceedings to open an estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death . . . ."  *Id.* § V.C.2.  The CMO expressly warns counsel that "failure to comply with the provisions [in Section V of the CMO] . . . will entitle Defendant to request a dismissal of plaintiff's action with prejudice in accord with Fed. R. Civ. P. 25(a)."  *Id.* § V.C.3.  In this case, each of the stated requirements was violated.

   **B.     John Watts, Through His Counsel, Violated the MDL Court's CMO and Rule 25.**

John Watts, through his counsel, violated the MDL court's CMO and caused the MDL court to appoint a substitute plaintiff who was not "the proper party" under Federal Rule of Civil

---

representative (when he was not) had made material misrepresentations to the MDL court and had also ignored the state survivorship and probate laws of Pennsylvania.  *Id.* at 380-387.

[6] *See* Case Management Order No. 1, *In re Aredia & Zometa Prods. Liab. Litig.*, No. 3:06-MD-01760 (M.D. Tenn. July 28, 2006), *as amended by* Case Management Order No. 2 (M.D. Tenn. Aug. 17, 2006) (collectively, the "CMO") (relevant excerpts included as Exhibit 8).

Procedure 25(a).  First, plaintiff's counsel failed to file a Suggestion of Death within sixty days of Bernard Watts's death, as required by § V.A of the CMO in effect the time of his death.  The Suggestion of Death was filed on January 26, 2011, more than five months after Bernard Watts's death.  Second, plaintiff's counsel failed to "initiate . . . proceedings to open an estate and/or obtain the appointment of a personal representative" on behalf of the deceased plaintiff within 30 days of his death in 2010, as required by § V.C.2 of the CMO.  In fact, such proceedings have never been initiated.  *See* Casady Decl. (Exhibit 7).  Third, in the Motion for Substitution, plaintiff's counsel failed to accurately describe why John Watts was the "proper" party to be substituted for Bernard Watts, as required by § V.C.1 of the CMO.  Instead, plaintiff's counsel misrepresented that John Watts was the "Executor of the Estate of Bernard A. Watts," when he had never been duly appointed as such.  As a result, John Watts, through his counsel, violated the MDL court's CMO and caused the MDL court to appoint a substitute plaintiff who was not "the proper party" under Federal Rule of Civil Procedure 25(a).

**III.     The Court Should Dismiss This Lawsuit With Prejudice Based on the Combination of Misrepresentations, Failure To Comply With State Law, and Failure To Comply With the CMO and Rule 25.**

This is not the first court to consider actions to remedy improper plaintiff substitutions in Aredia®/Zometa® cases.  In January 2012, a remand court in the U.S. District Court for the Western District of Arkansas became the first of many courts to address the MDL court's CMO and its relationship to applicable state laws.  The court dismissed the case based on an improper substitution of a deceased plaintiff, concluding that the plaintiff's failure to comply with the state survival and probate law in Arkansas, the MDL court's CMO, and Rule 25 – "any one of which may justify dismissal" – had left the case without "a proper plaintiff to maintain a cause of action."  *McDaniel v. Novartis Pharm. Corp.*, No. 2:08-CV-02088, 2012 WL 32608, at *3 (W.D. Ark. Jan. 6, 2012).

8

More recently, in *Jacqueline Wilson v. Novartis Pharmaceuticals Corporation*, No. 13-10309, 2014 WL 3378316, at *1 (5th Cir. July 11, 2014), the plaintiffs, "through counsel, twice misrepresented to the court that they were the personal representatives of their mother's estate . . . , obtained the 2008 substitution order 'through deception' on the court, and then litigated the case for five years without legal authority to represent the estate."  The Fifth Circuit explained that despite plaintiffs' counsel's awareness of the MDL court's CMO and Rule 25(a), he misrepresented the status of his clients as personal representatives of their mother's estate when they had never been so appointed and had never even initiated proceedings for appointment.  *Id.* at *2.  The Fifth Circuit affirmed the district court's dismissal of the case based on improper substitution "pursuant to its inherent authority to sanction abusive litigation practices."  *Id.* at *1.

And just last week, the United States District Court for the Northern District of Illinois dismissed a Zometa® case based on the plaintiff's misrepresentations, failure to comply with Illinois state law, and failure to comply with Rule 25 and the MDL court's CMO.  Order at 3-6, *Porter v. Novartis Pharm. Corp.*, No. 1:06-cv-03052 (N.D. Ill. July 23, 2014), ECF No. 7358 (Exhibit 9) (holding "that plaintiff and his counsel have simply blown any right to proceed with this action and [] that time has run out on any opportunity to cure that fatal flaw.").

In addition to *McDaniel*, *Wilson*, and *Porter*, eight more Aredia®/Zometa® cases have been dismissed with prejudice by remand courts based on improper substitutions and other substitution errors.[7]  The MDL court also has dismissed three cases for similar

---

[7] *See* **(1)** Order at 3-4, *Chiapel v. Novartis Pharm. Corp.*, No. 4:06-cv-01642-RWS (E.D. Mo. Jan. 23, 2014), ECF No. 44 (Exhibit 10) (dismissing claims because the substitute plaintiff was not the personal representative of the deceased plaintiff's estate and thus had no "legal status" or "standing" to continue the litigation under Missouri law), *appeal docketed*, No. 14-1452 (8th Cir. Feb. 28, 2014); **(2)** *Wallace*, 984 F. Supp. 2d at 380-387 (dismissing case with prejudice due to plaintiff's (and his counsel's) failure to comply with state law, the MDL court's CMO, and Rule 25); **(3)** Order, *Gove v. Novartis Pharm. Corp.*, No. 0:13-cv-01410-ADM-JJG (D. Minn. Oct. 8,

misrepresentations, violations of state law, the CMO, and Rule 25.[8]

The MDL court's Order permitting the substitution of John Watts was obtained on the basis of misrepresentations, a failure to comply with Ohio law, and clear violations of the MDL court's CMO. Like the purported substitute plaintiffs in the other Aredia®/Zometa® cases cited above – who had never been duly appointed as the representatives of the deceased plaintiffs in those cases – this case should also be dismissed with prejudice.

---

2013), ECF No. 30 (Exhibit 11) (action dismissed with prejudice *sua sponte* pursuant to Fed. R. Civ. P. 25(a) for failure to timely file a motion for substitution); **(4)** Order at 5, *Blumenshine v. Novartis Pharm. Corp.*, No. 4:08-cv-00567-SOW (W.D. Mo. July 23, 2013), ECF No. 39 (Exhibit 12) ("because plaintiff failed to comply with the MDL court's CMO [regarding substitutions for deceased plaintiffs], plaintiff's case must be dismissed."); **(5)** Order at 7-8, *Carter v. Novartis Pharm. Corp.*, No. 4:12-cv-00605-DPM (E.D. Ark. June 4, 2013), ECF No. 54 (Exhibit 13) (dismissing the complaint with prejudice for failure to initiate proceedings to appoint a personal representative as required by Arkansas's survivorship law and violations of Rule 25 as supplemented by the MDL court's CMO); **(6)** Order, *Joslin v. Novartis Pharm. Corp.*, No. 3:12-cv-05164-RBL (W.D. Wash. May 30, 2013), ECF No. 81 (Exhibit 14) (granting Novartis's motion to dismiss, which was based on the substitute plaintiff's failure to comply with state law, the MDL court's CMO, and Rule 25); **(7)** *McGuinness v. Novartis Pharm. Corp.*, 289 F.R.D. 360 (M.D. Fla. 2013) (dismissing case after finding no excusable neglect for a late-filed substitution motion); **(8)** *Lawson v. Novartis Pharm. Corp.*, No. 3:12-cv- 74-MCR/EMT, 2012 WL 8499733, at *1 (N.D. Fla. Oct. 5, 2012) (action dismissed with prejudice *sua sponte* pursuant to Fed. R. Civ. P. 25(a) for failure to timely file a motion for substitution).

[8] *See* **(1)** Report & Recommendation ("R&R"), *Cole v. Novartis Pharm. Corp.*, No. 3:06-CV-00506, 2013 WL 2477224 (M.D. Tenn. June 10, 2013), *dismissed with prejudice*, 2013 WL 3479411 (M.D. Tenn. July 11, 2013) (order adopting and approving the Magistrate Judge's R&R for dismissal for failure to substitute a proper plaintiff), *appeal docketed*, No. 13-6046 (6th Cir. Aug. 13, 2013); **(2)** Report & Recommendation, *Spiese v. Novartis Pharm. Corp.*, No. 3:06-CV-0858, 2013 WL 2317743 (M.D. Tenn. May 28, 2013), *dismissed with prejudice*, 2013 WL 2947869 (M.D. Tenn. June 14, 2013) (order dismissing case based on violations of Rule 25 and the MDL court's CMO requiring compliance with Pennsylvania law), *appeal docketed*, No. 13-5941 (6th Cir. July 16, 2013); and **(3)** Report & Recommendation, *Kathleen Wilson v. Novartis Pharm. Corp.*, No. 3:06-CV-0966, 2013 WL 1482945 (M.D. Tenn. Apr. 10, 2013), *dismissed with prejudice*, 2013 WL 1984389 (M.D. Tenn. May 13, 2013) (dismissing case based on violations of Rule 25 and the MDL court's CMO requiring compliance with Texas law and, in connection with the misleading substitution filings, also finding that plaintiff's counsel perpetrated "a fraud on the court, which justifies the sanction of dismissal"), *appeal docketed*, No. 13-5771 (6th Cir. June 7, 2013).

Lastly, the plaintiff here has filed no motion for extension pursuant to Rule 6(b), seeking to file a new or revised substitution motion to replace the faulty one filed on behalf of John Watts back in April 2011, and it would be impossible to file an approvable motion at this time because counsel cannot show excusable neglect.  In *McGuinness*, 289 F.R.D. at 361, the Aredia®/Zometa® claim was dismissed by the Middle District of Florida because plaintiff's counsel failed to file a proper motion for substitution within Rule 25(a)'s 90-day deadline. Plaintiff's counsel filed two weeks late and demonstrated no excusable neglect for failing to file on time.  *Id.* at 361, 363-64.  Unlike the two-week delay in *McGuinness*, a motion for extension in this case would be more than three years late.

Moreover, the delay in this case has been entirely within the control of the purported substitute plaintiff and involves affirmative misrepresentations made to the MDL court; thus he and his counsel cannot be considered to have acted in good faith.  *See Howard v. Nationwide Prop. & Cas. Ins.*, 306 F. App'x 265, 267-68 (6th Cir. 2009) (affirming district court's finding of no excusable neglect for plaintiff's counsel's failure to timely respond to defendant's summary judgment motion because, even though defendant was not prejudiced by the delay, "the delay significantly impacted judicial proceedings, was not excusable, and was entirely within Plaintiff's control" and rejecting plaintiff's argument that she should not be punished for her attorney's error because "'clients must be held accountable for the acts and omissions of their attorneys'" (quoting *Pioneer Inv. Servs. Co. v. Brunswick Assocs. P'ship.*, 507 U.S. 380, 395-97 (1993) (setting out factors for courts to balance when determining existence of excusable neglect)); *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633-34 (1962) (upholding a dismissal for counsel's misconduct because "[p]etitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely

11

selected agent"); *Knoll v. Am. Tel. & Tel. Co*., 176 F.3d 359, 366 (6th Cir. 1999) ("[W]e must return to the principle enunciated by the Supreme Court in *Link* . . . that a party ultimately assumes responsibility for the actions of its freely selected agent.").

## CONCLUSION

This lawsuit should be dismissed with prejudice based on the combination of misrepresentations, the failure to comply with Ohio state law, and the violations of the MDL court's CMO and Rule 25.  The result of these violations is that there is no one with legal authority or standing to continue this action.


Dated:  July 28, 2014                    Respectfully submitted,

/s/ Katharine R. Latimer
Katharine R. Latimer (*pro hac vice* counsel)
(klatimer@hollingsworthllp.com)
Catherine R. Baumer (*pro hac vice* motion pending)
(cbaumer@hollingsworthllp.com)
  HOLLINGSWORTH LLP
  1350 I Street, N.W.
  Washington, DC  20005
  (202) 898-5800
  (202) 682-1639 (fax)

Rex Littrell (0042419)
(rlittrell@ulmer.com)
  Ulmer & Berne LLP
  88 East Broad Street, Suite 1600
  Columbus, OH 43215
  (614) 229-0012
  (614) 229-0013 (Fax)

Megan B. Gramke (0079886)
(mgramke@ulmer.com)
  Ulmer & Berne LLP
  600 Vine Street, Suite 2800
  Cincinnati, OH 45202
  (513) 698-5146
  (513) 698-5147 (fax)

*Counsel for Defendant Novartis*
*Pharmaceuticals Corporation*

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(f)</u>

Pursuant to Local Rule 7.1(f), the undersigned hereby certifies that this case has not yet been assigned.  The Memorandum in Support of Novartis's Motion to Dismiss With Prejudice is twelve (12) pages in length and is within the limitations for an unassigned matter.

/s/ Katharine R. Latimer
Katharine R. Latimer (*pro hac vice* counsel)
(klatimer@hollingsworthllp.com)
  HOLLINGSWORTH LLP
  1350 I Street, N.W.
  Washington, DC  20005
  (202) 898-5800
  (202) 682-1639 (fax)

*Counsel for Defendant Novartis
Pharmaceuticals Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have, on this 28th day of July 2014, served a true and correct copy of the foregoing Memorandum in Support of Novartis's Motion to Dismiss With Prejudice, by operation of the Court's Electronic Case Filing System, on:

William B. Curtis                       Michael L. Eisner
7557 Rambler Road                   Elk & Elk
Suite 1050                               6105 Parkland Blvd.
Dallas, TX 75231                      Mayfield Heights, OH 44124
(214) 890-1000                         (440) 442-6677
(214) 890-1010 (fax)                 (440) 442-7944 (fax)
bcurtis@curtis-lawgroup.com     meisner@elkandelk.com


/s/ Katharine R. Latimer
Katharine R. Latimer (*pro hac vice* counsel)
(klatimer@hollingsworthllp.com)
 HOLLINGSWORTH LLP
 1350 I Street, N.W.
 Washington, DC  20005
 (202) 898-5800
 (202) 682-1639 (fax)


*Counsel for Defendant Novartis*
*Pharmaceuticals Corporation*