# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| JOHN C. WATTS, | ) | CASE NO. 5:08-cv-2354 |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| NOVARTIS PHARMACEUTICALS CORPORATION, | ) ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the motion of defendant Novartis Pharmaceuticals Corporation ("defendant" or "Novartis") to dismiss this action with prejudice. (Doc. No. 10 ["Motion"].) Plaintiff John C. Watts ("plaintiff" or "John Watts") has opposed the motion (Doc. No. 11 ["Opp'n"]), and Novartis has replied (Doc. No. 12 ["Reply"]). Defendant has filed supplemental authority in support of its motion (Doc. No. 14 ["Def. Supp."]), and plaintiff has filed supplemental evidence in support of his opposition (Doc. No. 13 ["Pl. Supp."]).

For the reasons contained herein, defendant's motion to dismiss is DENIED.

## I. BACKGROUND

This action was originally filed by Bernard A. Watts, alleging that the drug Zometa, produced and marketed by Novartis, caused him to develop osteonecrosis of the jaw. (Doc. No. 1 ["Compl."].) On November 10, 2008, the case was transferred to the Middle District of Tennessee ("MDL court") by the United States Judicial Panel on Multidistrict Litigation ("MDL Panel") as a tag-along action in MDL No. 1760, *In Re: Aredia and Zometa*

*Products Liability Litigation*. (Doc. No. 3.)

Bernard Watts died on August 21, 2010 while the case was pending in the MDL court. Bernard Watts's Last Will and Testament appointed his son, John Watts, as the executor of his estate if his wife, Virginia Watts, was unable to serve as the executrix.[1] Under the will, John Watts is the sole beneficiary of his father's estate. (Doc. No. 11-2 ["Will"] at 177.)

On January 26, 2011, plaintiff filed—as Executor of the Estate of Bernard Watts—a suggestion of death with the MDL court. (Doc. No. 11-3 ["Sugg. of Death"].) A motion for substitution in the MDL court followed on April 25, 2011. (Doc. No. 11-4 ["Mot. Sub."].) In the motion, plaintiff represented that he was the executor of the estate and, as support for the substitution, stated simply that "Mr. Bernard [sic] did leave a will appointing his son, John C. Watts, as his sole beneficiary and executor of his estate" and appended a copy of the will to the motion. (*Id*. at 182; *see* Will.) The MDL court granted the motion and substituted John Watts as the plaintiff in this case. (Doc. No. 11-5 ["Sub. Order"].)

Subsequently, the case was remanded to this Court by the MDL Panel. (Doc. No. 4.) Defendant's motion, filed on July 28, 2014 (about one month after remand), contends that John Watts was never appointed as the executor of his father's estate under Ohio law and lacks authority to maintain this action. Novartis does not seek to vacate the MDL court's order of substitution, but simply seeks dismissal of the present action.

Following the filing of the present motion, plaintiff applied to the Summit County probate court for appointment as executor of Bernard Watts's estate. (*See* Pl. Supp. at

---

[1] There is no dispute that Virginia Watts pre-deceased her husband, Bernard Watts. (Doc. No. 10-7 [Deposition of John Watts ["Watts Dep."]] at 123.)

202.) On September 5, 2014, the county probate court granted the motion, declaring plaintiff to be the estate's executor. (Doc. No. 13-1 ["Entry App. Fid: Letters of Auth."].) Defendant does not dispute that plaintiff is now the duly appointed executor of his father's estate.

## II. DISCUSSION

**A. Fed. R. Civ. P. 25 and the MDL CMO**

The Court's analysis of defendant's motion begins with Rule 25(a) of the Federal Rules of Civil Procedure and the MDL's Case Management Order ("MDL CMO"), which together govern the substitution of parties in this case. Fed. R. Civ. P. 25(a)(1) provides for the substitution of parties when a party to a lawsuit in federal court dies.

**Fed. R. Civ. P. 25—Substitution of Parties**

**(a) Death.**
**(1)** *Substitution if the Claim Is Not Extinguished.* If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Because the drug Zometa had been administered to terminally ill patients, and it was likely that many of the individual plaintiffs would die before the conclusion of the MDL, the MDL court made specific provisions for the substitution of parties in its CMO. The MDL CMO references Rule 25, and supplements the federal rule regarding the procedural requirements for substitution when a party dies.[2] Section V of the MDL CMO provides as follows:

---

[2] *See Carter v. Novartis Pharm. Corp.*, No. 4:12-cv-605-DPM, 2013 WL 9935634, at *1 (E.D. Ark. June 4, 2013).

### V. Substitution of Plaintiffs.

In the event that a Plaintiff dies before his or her individual action is remanded, the following procedures shall govern the substitution of an individual as plaintiff in place of the deceased plaintiff:

A. Suggestion of Death. Within thirty (30)[3] days of entry of this Order or the death of a plaintiff, whichever is later, plaintiff's counsel shall file a "Suggestion of Death" that identifies the plaintiff and describes the time, date, and circumstances of the plaintiff's death.

B. Timing of Motion for Substitution. The ninety (90) day time period for filing a Motion for Substitution, as required by Fed. R. Civ. P. 25(a), will commence upon the filing of a Suggestion of Death or upon the passage of 30 days from the entry of this Order, whichever is later.

C. Contents of Motion for Substitution.

1. The Motion for Substitution shall identify the proposed substitute plaintiff by name and shall describe why the proposed substitute plaintiff is a "proper" party and why the claim has not been extinguished under the applicable state survivorship statute or applicable state common law.

2. In the event that applicable state law requires the opening of an estate and the appointment of a personal representative to pursue the claims of a deceased plaintiff, plaintiff's counsel shall initiate or cause to be initiated proceedings to open an estate and/or obtain the appointment of a personal representative for plaintiff within thirty (30) days of the plaintiff's death or thirty (30) days from the entry of this Order, whichever is later.

a. If available at the time of filing, plaintiff's counsel shall attach as an exhibit to the Motion to Substitute a copy of any Order appointing the person sought to be substituted as the personal representative of the deceased plaintiff.

b. In the event that no personal representative has been appointed by the deadline for filing a Motion for Substitution, plaintiff's counsel shall describe in the Motion to Substitute the steps taken to obtain the appointment of a personal representative and state whether there are any competing applications. If the Court determines that the person sought to be substituted would be a proper party if appointed a personal representative of the deceased plaintiff and that

---

[3] In the original MDL CMO, the time for filing the Suggestion of Death was 30 days. The amended MDL CMO, issued on August 17, 2006, extended this time to 60 days. Subsequent amendment extended this time to 90 days. (*See* Motion at 86.)

>    the provisions of this Section of the Order and Fed. R. Civ. P. 25(a) have otherwise been complied with, the Court will provisionally grant the Motion for Substitution on the condition that the substituted plaintiff submit to the Court prior to remand of the plaintiff's claims a copy of the Order appointing him or her as the deceased plaintiff's personal representative.
>
>    3. Plaintiff's failure to comply with the provisions of this Section, including the requirement that an Order appointing the substitute plaintiff as the decedent's personal representative be filed prior to remand where the Court grants a provisional substitution, will entitle Defendant to request a dismissal of plaintiff's action with prejudice in accord with Fed. R. Civ. P. 25(a).
>
>    D. Opposition to Substitution. Nothing in this section shall preclude Defendant from challenging the authority or capacity of the proposed substitute plaintiff.

(Doc. No. 10-9 ["MDL CMO"].)

There is no question that the MDL CMO set clear time requirements for the filing of a suggestion of death, and a motion for substitution (within 90 days after the filing of the suggestion of death). The MDL CMO also puts counsel and parties on notice that they are required to comply with all relevant state probate laws. Notwithstanding these clear dictates, it is undisputed that the suggestion of death was filed outside of the time limit set in the MDL CMO. It is also beyond dispute that John Watts was not the duly appointed executor, under Ohio law, when he moved for substitution before the MDL court.

Defendant contends that this case should be dismissed because plaintiff failed to comply with the procedural requirements of Rule 25(a) and the MDL CMO. As a consequence, defendant argues that, from the time of Bernard Watts's death, this action has lacked a proper party-plaintiff. Novartis directs the Court's attention to numerous cases wherein the actions were dismissed because of a failure to comply with the procedural rules and lack of a proper party-plaintiff to pursue the action. But these cases are distinguishable from the instant action on both the facts and procedural posture, and because the Court's

5

decision herein is ultimately based on these distinctions, it is important to flesh out those differences.

In the majority of cases relied upon by defendant, the applicable state law statute of limitations had run making appointment of a proper party impossible. *See, e.g.*, *Rapa v. Novartis Pharmaceuticals Corp.*, Case No. 4:08CV01671, --F. Supp. 3d--, 2014 WL 5161311 (E.D. Mo. Oct. 15, 2014) (state law time-barred appointment of proper party); *Chiapel v. Novartis Pharmaceuticals Corp.*, Case No. 4:06 CV 1642 RWS, 2014 WL 6803015 (E.D. Mo. Jan. 23, 2014) (state law time-barred appointment of proper party); *Wallace v. Novartis Pharmaceuticals Corp.*, 984 F. Supp. 2d 377 (M.D. Pa. 2013) (Novartis moved to vacate MDL court's order of substitution because a "personal representative" as not appointed when motion made, and Pennsylvania law abated action if personal representative of decedent not appointed within one year of suggestion of death); *Blumenshine v. Novartis Pharmaceuticals Corp.*, Case No. 08-0567-CV-W-SOW, 2013 WL 9935588 (W.D. Mo. July 23, 2013) (state law time-barred appointment of proper party); *Carter v. Novartis Pharmaceuticals Corp.* No. 4:12-cv-605-DPM, 2013 WL 9935634 (E.D. Ark. June 4, 2013) (time-barred by state law to revive abated claims that survive death of party).

In other cases, no action was ever taken to secure the appointment of a proper party. *See e.g.*, *Wilson v. Novartis Pharmaceuticals Corp.*, 575 F. App'x 296 (5th Cir. 2014) (when children of deceased never actually appointed as personal representative of their mother's estate, the district court vacated the MDL court's order of substitution); *Porter v. Novartis Pharmaceuticals Corp.*, Case No. 06 C 3052, 2014 WL 3639135 (N.D. Ill. July 23, 2014) (proper party never appointed); *Gove v. Novartis Pharmaceuticals Corp.,* Civil No. 13-1410 ADM/JJG (D. Minn. Oct. 8, 2013) (no motion for substitution filed); *Lawson v.*

*Novartis Pharmaceuticals Corp.*, No. 3:12cv74-MCR/EMT, 2012 WL 8499733 (N.D. Fla. Oct. 5, 2012) (no activity in case and time to file motion for substitution expired with no motion filed); *McDaniel v. Novartis Pharmaceuticals Corp.*, No. 2:08-CV-02088, 2012 WL 32608 (W.D. Ark. Jan. 6, 2012) (proper party never appointed under state law and time to revive "dead" claim elapsed under state law).

Unlike these cases, John Watts is not time-barred by Ohio law from seeking appointment as the personal representative of his father's estate. In fact, when faced with a motion to dismiss, John Watts applied for and received an appointment under Ohio law. Moreover, Novartis does not contend that after his appointment by the probate court, John Watts is prohibited by Ohio law from continuing with this action as the personal representative of the estate of Bernard Watts.

The particular facts and procedural posture in which this case presents itself to the Court is uniquely different from the facts and procedural posture of the cases that Novartis cites in support of its motion. Given these unique distinctions, a closer examination of Rule 25 and the MDL CMO is required to determine what effect, if any, the particular circumstances of this case have on the application of these rules in the context of defendant's motion to dismiss.

**B. History of Rule 25(a)(1)**

Prior to 1963, "federal courts often strictly construed Fed. R. Civ. P. 25 to preclude substitution of parties." *In re Baycol Products Litigation*, 616 F.3d 778, 783 (8th Cir. 2010) (citing *Gertler v. United States*, 18 F.R.D. 307, 308-09 (S.D.N.Y 1955)). "As a result, in 1963, the Supreme Court amended Rule 25(a)(1). The purpose of the 1963 amendments to Rule 25, which replaced the harsher prior rule regarding proper party plaintiffs, was to

liberalize the rule and to allow flexibility in substitution of parties."[4] *Id.* at 783 (internal quotation marks omitted) (quoting *Sinito v. U.S. Dep't. of Justice*, 176 F.3d 512, 516 (D.A.D.C. 1999)).

The language of Rule 25 is permissive and the decision to substitute a party lies within the sound discretion of the Court. *Baycol*, 613 F.3d at 783 (citation omitted). However, the Advisory Committee Notes on the 1963 amendments to Rule 25 counsel that the amendments "intended that motions to substitute be freely granted." *Id.* at 783 (citing Fed. R. Civ. P. 25, Advisory Committee Notes of 1963); *Francis,* 1992 WL 57953, at *1 ("Whether an action should be dismissed for failure to comply with the 90 day time limit lies within the sound discretion of the Court.") (citing *Zeidman v. General Accident Ins. Co*. 122 F.R.D. 160, 161 (S.D.N.Y. 1988); *Staggers v. Otto Gerdau Co*., 359 F.2d 292, 296 (2d Cir. 1966)).

The intended flexibility of Rule 25 in the substitution of parties was reflected in the "groundbreaking case" of *Rende v. Kay*, 415 F.2d 983 (D.C. Cir. 1969), which addressed "who may be considered decedent's 'successor' under Rule 25(a)(1), and therefore, also a proper party for purposes of substitution." *Baycol*, 616 F.3d at 783. In *Rende*, the defendant died during litigation in federal court. The defendant's counsel filed a suggestion of death pursuant to Rule 25(a)(1), but no legal representative was appointed, and the defendant

---

[4] "Before the 1963 amendments to Rule 25(a)(1), the rule resulted in an 'inflexible requirement that an action be dismissed if substitution is not carried out within a fixed period measured from the time of death.'" *Francis v. Francis*, No. 1:09CV1235, 1992 WL 57973, at *1 (N.D. Ohio Jan. 7, 1991) (quoting Fed. R. Civ. P. 25(a)(1) Advisory Committee Notes to the 1963 Amendment). After the amendment, the 90 day period starts with the filing of the suggestion of death, not the actual death of the party. A motion for substitution may be made without first filing a suggestion of death, though if the suggestion of death is filed, the motion must be made within 90 days unless extended pursuant to Fed. R. Civ. P. 6(b). Fed. R. Civ. P. 25(a)(1) Advisory Committee Notes to the 1963 Amendment. But "the history of the rule makes clear that the 90-day time period was not intended to act as a bar to otherwise meritorious actions, and extensions of the period may be liberally granted." *In re Aredia and Zometa Prods. Liab. Litig.,* No. 3-06-MD-1760, 2011 WL 3608636, at *1 n.3 (M.D. Tenn. Aug. 16, 2011) (citing *Continental Bank v. Meyer*, 10 F.3d 1293, 1297 (7th Cir. 1993)).

ultimately moved to dismiss for lack of a proper party-defendant. But the court in *Rende* observed this "tactic" of defendant's attorney would place the burden on the plaintiff "to produce some representative of the estate ad litem, pending appointment of the representative contemplated by the law of the domicile of the deceased." *Id*. at 784 (quoting *Rende*, 415 F.2d at 986). "For these reasons, the [*Rende*] court concluded that 'a suggestion of death [should] identify the representative or successor of an estate who may be substituted as a party for the deceased before Rule 25(a)(1) may be invoked by those who represent or inherit from the deceased.'" *Id.*

After *Rende*, a number of courts adopted and expanded the principles of *Rende* establishing the circumstances under which a person may be a "successor"—and a proper party—under Rule 25(a)(1). *Id*. at 784-85 (collecting cases). These circumstances include a person who is: "(1) the primary beneficiary of an already distributed estate, *see Rende*, 415 F.2d at 985; (2) named in a will as the executor of decedent's estate, even if the will is not probated, *see* [*McSurely v. McClellan*, 753 F.2d 88, 98 (C.A.D.C. 1985)]; or (3) the primary beneficiary of an unprobated intestate estate which need not be probated. *cf*. [*Hardy v. Kaszycki & Sons Contractors, Inc.*, 842 F. Supp. 713, 716 (S.D.N.Y. 1993]." *Id*.

A recent case in the Southern District of Ohio also interpreted Rule 25 in a similar, flexible manner. In *Mason v. Asset Acceptance, LLC*, No. 1:06-CV-735, 2007 WL 2112347 (S.D. Ohio July 9, 2007), the court granted a motion to substitute the sister of a deceased party-plaintiff, who provided an affidavit that the decedent died intestate without spouse or children, left no assets, and that the movant was the closest living heir. *Mason*, 2007 WL 2112347, at *1. The deceased party-plaintiff was an Ohio resident, therefore, Ohio probate law applied. Defendant moved for reconsideration of the substitution order on the

9

grounds that the sister was not a "proper party" under Rule 25 because she has not been appointed executor of the estate of the deceased party. *Id*. But the court denied the motion, concluding that "a party need not necessarily be appointed administrator or executor of the decedent's estate in order to be substituted as a party as long as the substitute is a distributee of the estate." *Mason*, 2007 WL 2112347, at *2 (citing *Sinito v. U.S. Dept. of Justice*, 176 F.3d at 516 and *Hardy,* 842 F. Supp. 713 (S.D.N.Y 1993)). Further, the court in *Mason* observed that defendant did not dispute that the substituted sister was the closest living heir to the deceased party-plaintiff, and could "[see] no value in requiring Ms. Kalluski to go through the process of being formally appointed Ms. Sewell's executor for the sole purpose of achieving what at best amounts to mere technical compliance with Rule 25." *Id*.

In this case, John Watts was named as the executor of his father's estate by his father's will, and on that representation was substituted by the MDL court. There is no dispute that the mother of John Watts predeceased her husband, and that John Watts is the sole beneficiary of his father's estate. Under the federal case law that has developed after the amendment to Rule 25 in 1963, John Watts is a "successor" within the meaning of the rule even if at the time Bernard Watts's will had not been probated. Since that time, the will has been probated and John Watts has been named the executor of the estate by the Summit County probate court, and there is no state law bar to this case going forward. The conclusion that John Watts is the successor to Bernard Watts—and therefore a proper party—under the reasoning of *Rende* and its progeny, is consistent with an outcome resulting from the application of Ohio substantive law, as discussed below.

"Rule 25(a) is a procedural rule setting forth the proper method for the substitution of parties, and federal courts must apply federal rules, rather than state law, in

determining the proper procedure for substitution following a party's death." *In re Baycol*, 616 F.3d at 785; *see Huggard v. United Performance Metals, Inc.*, No. 1:10-cv-63, 2011 WL 6817770, at *1 (S.D. Ohio Dec. 28, 2011) (Rule 25(a)(1) "is procedural and merely describes the method by which the original action may proceed if the right of action survives." (citing 7C Wright & Miller, Fed. Prac. & Proc. Civ. § 1952 (3d ed.) (further citation omitted))), *adopted by* 2012 WL 368222 (S.D. Ohio Feb. 3, 2012). However, "[w]hether the death of a party extinguishes a claim is a question of substance on which state law ordinarily governs." *Id*. Likewise, "[t]he question of *who* is a proper party is a substantive issue, for which we must rely upon state law." *Baycol*, 616 F.3d at 787-88). Ohio law holds the answers to those questions.

**C. Ohio Substantive Law**

    **1. Survival of actions**

Ohio Rev. Code § 2305.21 governs the causes of action which survive the death of a party. Under § 2305.21, physical injuries, such as the injury alleged in this case, survive notwithstanding the death of the injured person. *See Tinney v. Richland Cnty.*, No. 1:14 CV 703, 2014 WL 6896256, at *1 (N.D. Ohio Dec. 8, 2014) (citing Ohio Rev. Code § 2305.21 and *Witcher v. Fairlawn*, 680 N. E. 2d 713, 715 (Ohio Ct. App. 1996) (further citation omitted)). Under Ohio law, Bernard Watts's cause of action in this case survives his death and Novartis does not contend otherwise.

    **2. Proper party**

Causes of actions that survive under § 2305.21 pass to the decedent's estate, and the personal representative of decedent's estate may pursue decedent's claims for the benefit of the estate. *Piskura v. Taser Int'l, Inc.*, No. 1:10-cv-248-HJW, 2013 WL 1329704, at

\*4 (S.D. Ohio Mar. 29, 2013) (citing *Shinaver v. Szymanski,* 471 N.E.2d 477, 482 (Ohio 1984) ("Under the general survival statute, R.C. 2305.21, a victim's right of action for personal injuries survives and passes to her personal representative . . . [who] may maintain an action in the same manner in which decedent could have maintained such action if [he] had survived.")).

In Ohio, the personal representative of the decedent's estate is the executor or administrator appointed by the probate court. *See Wingrove v. Forshey*, 230 F. Supp. 2d 808, 826 (S.D. Ohio 2002) (citations omitted). The designation of an individual as the executor in a decedent's will is insufficient to render the designated individual the "personal representative" of the decedent's estate for purposes of Ohio Rev. Code § 2305.21. *Petitt v. Morton*, 162 N.E. 627, 628 (Ohio Ct. App. 1928) (a will is a "mere scrap of paper . . . until it is clothed with the garment of the law" . . . "a mere carcass until infused with the blood of probate").

Unlike other states, Ohio has no time limit to open an estate or to be appointed as the estate's personal representative. John Watts has now opened an estate in the Summit County probate court, and has been appointed by the probate court as the executor of his father's estate.

### 3. Relation back doctrine

In Ohio, the doctrine of "relation back" validates actions taken prior to the appointment of the administrator of an estate when application of the doctrine results in a benefit to the estate. *Wrinkle v. Trabert*, 188 N.E.2d 587, 590 (Ohio 1963) (citing *Archdeacon, Adm'r v. Cincinnati Gas & Elec. Co*., 81 N.E. 152 (Ohio 1907) (further citation omitted)); *Douglas v. Daniels*, 22 N.E.2d 1003, 1006 (Ohio 1938) ("The title of personal representative . . . whenever appointed, relates back to the time of death . . . legalizing the acts

of the appointee performed between the date of the death . . . and that of the appointment, when in accordance with the powers conferred by law." (quoting 18 Ohio Jurisprudence 221, Section 175, Executors and Administrators)); *Reid v. Premier Health Care Servs. Inc.*, No. 17437, 1999 WL 148191, at *5 (Ohio Ct. App. Mar. 19, 1999) ("Customarily, there is a delay between death and the appointment of an administrator, and during this period rights ofttimes accrue which might well be lost to the estate if someone, even one without authority, could not act to protect such rights and have such acts subsequently validated by the proper appointment of an administrator. Thus, 'relation back' is necessary to protect estates and aid administrators in the fulfillment of their duties of administration." (quoting *Wrinkle*, 188 N.E.2d at 590)). The "relation back" doctrine applies to a variety of actions taken by the administrator prior to appointment for the benefit of the estate, including receipt of money or property, payment of debts and legacies, and compromises and settlements. *See Douglas,* 22 N.E.2d at 1006.

In this case, the relation back doctrine applies to the actions taken by John Watts in the instant action for the benefit of the estate before his appointment as estate executor by the probate court. The flexible interpretation of a "successor" and "proper party" by federal courts with respect to Rule 25 produces the same conclusion in this case as the application of Ohio law: namely, that this case has not been lacking a proper party-plaintiff under Rule 25.

Based on this outcome, the Court cannot discern any prejudice suffered by Novartis as a result of the belated appointment of John Watts by the probate court as the personal representative of his father's estate. Unlike many of the cases cited by defendant in support of its motion, John Watts is not barred by Ohio law from pursuing this survival action

simply because he opened his father's estate and was appointed by the probate court four years after his father's death. Given this outcome resulting from the application of Ohio law and federal case law regarding substitution of parties, Novartis is in no different position now than if John Watts had secured his appointment from the probate court upon his father's death.

**D. Timeliness under Rule 25 and the MDL CMO**

Even if plaintiff can be considered a proper party under Rule 25(a), defendant argues that dismissal is warranted because plaintiff failed to meet the timing requirements of the MDL CMO. In support, defendant cites *Falls v. Novartis Pharmaceuticals Corp.*, Civil No. 3:13cv270 (JBA), 2014 WL 3810246 (D. Conn. Aug. 1, 2014). Though, at first blush the facts appear analogous, once again there are significant differences that serve to underscore the unique factual and procedural posture of this case. In *Falls*, a case that was not attached to a MDL, the plaintiff failed to file a timely motion for substitution with the district court, despite representations to the court by plaintiff's counsel that he would do so, and inquiries by the court regarding the status of the filing, to which plaintiff's counsel did not respond. Novartis moved to dismiss. In response, plaintiff filed her untimely motion for substitution with the district court, at which time plaintiff's widow had been appointed temporary administrator of the estate and was ultimately appointed executor of the estate. The court in *Falls* granted the motion to dismiss based on the plaintiff's failure to comply with the time requirements of Rule 25 and finding no excusable neglect. *Falls*, 2014 WL 3810246, at *2-5.

In *Falls*, the motion to substitute was not timely filed before the district court and Novartis moved to dismiss the action—the motion to substitute in *Falls* was never granted. Unlike *Falls*, plaintiff's motion to substitute in this case was before the MDL court

and, despite an untimely suggestion of death, the motion was granted. The untimeliness of the suggestion of death under the MDL CMO was readily apparent to Novartis at the time it was filed, but Novartis did not request dismissal pursuant to the MDL CMO. More importantly, the untimeliness of the suggestion of death was readily apparent to the MDL court, which made a determination at that time to grant the motion for substitution notwithstanding any failure to comply with the timing requirements of its MDL CMO. By granting the motion for substitution, the MDL court "overcame [any] procedural defects that had occurred to that point."[5] *Carter,* 2013 WL 9935634, at *2. Novartis has not moved to vacate the substitution order, and this Court will not now entertain a motion to dismiss this action based on plaintiff's failure to comply with the case management order of another court when that court chose to grant the substitution. *Id.*

Much of defendant's motion is devoted to the argument that plaintiff can show no excusable neglect for his various perceived shortcomings under Rule 25(a). Rule 6(b) provides that, where a party has failed to comply with a deadline set forth in the Federal Rules of Civil Procedure, the tardiness may be excused upon a showing of "excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). The only deadline contained in Rule 25(a) is the requirement that a substitution motion be filed within 90 days "after service of a statement noting death[.]" Fed. R. Civ. P. 25(a)(1). Defendant does not suggest that plaintiff's substitution motion was filed more than 90 days after the filing of the suggestion of death, nor could it given the fact that the substitution motion was filed on the 89th day after the filing of the suggestion of death in

---

[5] It is worth noting that the very language of the MDL CMO—which references Rule 25—indicates some flexibility, stating that non-compliance will entitle Novartis to request dismissal, but not requiring dismissal. (*See* MDL CMO § V(C)(3).) Thus, the MDL court was well within its rights to excuse any untimely or otherwise facially deficient filings.

15

the MDL court. Rather, Novartis makes the argument that because it believes that plaintiff was not a proper party under Rule 25(a) at the time he filed his motion, the motion was defective and no *proper motion* was timely filed. As the Court has already concluded, however, the flexibility of Rule 25(a), supported by the relaxed requirements of Ohio probate law and John Watts's now duly appointed status, dictates that plaintiff was a proper party under Rule 25(a). As such, this Court need not explore whether any untimeliness under the rule need be cured by a finding of excusable neglect.

**E. Alleged misrepresentations do not support dismissal**

Finally, Novartis contends that this action should be dismissed with prejudice because John Watts and his counsel misrepresented to this Court and the MDL court his status as a proper substitute party in this case. The Court disagrees.

Novartis does not dispute that the will named John Watts the executor and the sole beneficiary of his father's estate. The motion for substitution (1) specifically stated that "Mr. Watts did leave a will appointing his son, John C. Watts, as his sole beneficiary and executor of his estate (see Exhibit "1")," and (2) attached the will. (Mot. Sub.) It was on this basis that the motion for substitution asked the MDL court to enter an order appointing John Watts the substitute plaintiff in this matter, and the MDL court granted the motion. (Sub. Order.)

While perhaps plaintiff's counsel was mistaken about the legal effect of the will in Ohio, he did not represent that John Watts was appointed by the probate court to be the executor or personal representative of his father's estate, and did not seek a provisional appointment pursuant to the MDL CMO. Presumably (and, again, mistakenly) he believed that he had met all the requirements for proper substitution of John Watts as the plaintiff when

16

the motion for substitution he caused to be filed was granted on a non-provisional basis. *Cf. Wilson,* 575 F. App'x at 297 (counsel misrepresented children were "personal representatives" of mother's estate in suggestion of death and motion for substitution).

As to the representations of John Watts, he was substituted as plaintiff in a representative capacity by order of the MDL court based on the motion filed by counsel. With his father's will in one hand, and the substitution order in the other hand, and no showing to the contrary, the Court cannot conclude that John Watts intentionally misled this Court when stating that he was the executor of his father's estate.

The Court in no way condones the failure of counsel to make himself aware of the state law applicable to this case, and such failure is sloppy lawyering at best. But the record before the Court is insufficient to conclude that the representations of John Watts and his counsel support dismissal of this action.

### III. CONCLUSION

For the reasons contained herein, defendant's motion to dismiss is DENIED. The outcome of the Court's legal analysis is the result of a confluence of very unique facts and procedural posture—were any of those variables different, a different legal outcome may well have been the result. Moreover, in reaching its conclusion, the Court notes that it did not find plaintiff's equitable argument in opposition to the motion persuasive. Had plaintiff's

request to be appointed executor been time-barred under state law, plaintiff's fate would have been no different than other litigants who have failed to timely comply with state probate laws.

**IT IS SO ORDERED**.

Dated: March 30, 2015

                                          **HONORABLE SARA LIOI**
                                          **UNITED STATES DISTRICT JUDGE**